UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICHARD HOPKINS,

        Plaintiff,

v.

CORRECT CARE SOLUTIONS et al.,

        Defendants.
_____/

Case No. 1:22-cv-1231

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a county detainee under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's federal claims against Defendant Correct Care Solutions for failure to state a claim. Plaintiff's state law claims against Defendant Correct Care Solutions will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, the following claims against Defendants Coyle and Jerkins: (1) Plaintiff's official

capacity claims; (2) Plaintiff's First Amendment retaliation claims; and (3) Plaintiff's Fourteenth Amendment equal protection claims. The following claims against Defendants Coyle and Jerkins remain in the case: (1) Plaintiff's Fourteenth Amendment individual capacity claims premised upon the receipt of inadequate medical care; and (2) Plaintiff's state law medical malpractice claims.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated at the Berrien County Jail in St. Joseph, Michigan. The events about which he complains occurred at that facility. Plaintiff sues contracted medical provider Correct Care Solutions (CCS), Dr. Oscar Jerkins, and Nurse Practitioner Mary M. Coyle. Plaintiff indicates that he is suing CCS in its official capacity and Defendants Jerkins and Coyle in their official and personal capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on or about December 2, 2021, he submitted a healthcare request because he had blood in his urine. (*Id.*, PageID.3.) He was seen by Defendants Jerkins and Coyle, who told Plaintiff to take meloxicam and drink water. (*Id.*) Plaintiff submitted subsequent healthcare requests on December 13, 2021, December 22, 2021, January 13, 2022, March 24, 2022, and June 28, 2022. (*Id.*) On each occasion, he was seen by Defendants Jerkins and Coyle. (*Id.*) Each time, they told Plaintiff to take meloxicam and drink water "and the blood in [his] urine will stop." (*Id.*)

Plaintiff continued to complain about the issue. On July 27, 2022, Defendants Coyle and Jerkins ordered a urinalysis and a urine culture. (*Id.*) The urinalysis revealed "clumps of leukocytes, which was abnormal." (*Id.*, PageID.4.) Plaintiff underwent an X-ray of his abdomen on July 29, 2022. (*Id.*) He then received a CT scan of his abdomen and pelvis on August 18, 2022.

(*Id.*) That scan revealed a "[l]arge bladder mass most consistent with primary bladder carcinoma." (ECF No. 1-4, PageID.18.)

Plaintiff underwent a cystoscopy on September 21, 2022. (ECF No. 1-6, PageID.23.) He was ultimately diagnosed with bladder cancer, and Defendants Coyle and Jerkins requested that he be approved to receive hematology and chemotherapy. (ECF No. 1, PageID.4.) Plaintiff contends that because Defendants Coyle and Jerkins did not refer him for a urinalysis until seven moths after he began to complain about blood in his urine, the cancer was able to spread and grow before it was detected. (*Id.*) Plaintiff alleges that his oncologist told him that his "cancer is in stage 3 and would have been stage 1 when [Plaintiff] first request[ed] medical attention." (*Id.*) Plaintiff states that he has been told that he has five years to live if he receives treatment, but only one year without treatment. (*Id.*, PageID.5.)

Based on the forgoing, Plaintiff asserts that Defendants Coyle and Jerkins violated his Fourteenth Amendment due process rights by providing inadequate medical care.[1] (*Id.*, PageID.3.) Plaintiff also suggests that Defendants Coyle and Jerkins violated his First Amendment rights by retaliating against him, and that they violated his Fourteenth Amendment equal protection rights. (*Id.*, PageID.3.) Plaintiff also asserts state law medical malpractice claims. (*Id.*, PageID.5.) Plaintiff seeks damages. (*Id.*, PageID.6.)

---

[1] In Plaintiff's complaint, he references the Eighth Amendment, rather than the Fourteenth Amendment, when setting forth his claims regarding his receipt of allegedly inadequate health care. (ECF No. 1, PageID.3.) As discussed herein, it appears that Plaintiff was likely a pretrial detainee when the events at issue occurred. Therefore, liberally construing *pro se* Plaintiff's complaint, as the Court is required to do, the Court construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim regarding the inadequate medical care, rather than an Eighth Amendment claim.

**II.     Failure to State a Claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

4

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Section 1983 Claims**

1. **Claims Against CCS**

Plaintiff has named CCS, the contracted medical provider for the Berrien County Jail, as a Defendant in this matter. A private entity that contracts with the state or county to provide a traditional state function like providing healthcare to inmates—like CCS—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins,* 487 U.S. 42, 54 (1988)). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.,* 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). has been extended to private corporations); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson,* 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of*

*Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to CCS, CCS's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth [or Fourteenth] Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, CCS's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted). Plaintiff's complaint, however, is wholly devoid of any facts alleging that the alleged constitutional violations were caused by a policy or custom put in place by CCS. Indeed, Plaintiff fails to mention CCS in the body of his complaint. Because Plaintiff fails to allege the existence of a policy or custom, he necessarily fails to show that the policy or custom was the "moving force of the constitutional violation," as he is required to do to state a claim against Defendant CCS. Therefore, Defendant CCS is properly dismissed.

> 2. **Claims Against Defendants Jerkins and Coyle**
>
> a. **Official Capacity**

Plaintiff has sued Defendants Jerkins and Coyle in both their official and personal capacities. Presumably, Plaintiff's official capacity claims against Defendants Jerkins and Coyle are based upon the fact that they are employees of CCS. Such official capacity claims, however, are actually claims against the employer, CCS. The Court has already concluded that Plaintiff has failed to state a claim against CCS. Thus, Plaintiff's official capacity claims against Defendants Jerkins and Coyle will be dismissed for the reasons set forth above.

### b.  Individual Capacity

### i.  First Amendment Retaliation

Plaintiff vaguely alleges that Defendants Coyle and Jerkins violated his First Amendment rights by retaliating against him by waiting seven months to refer Plaintiff for a urinalysis. (ECF No. 1, PageID.4.) He suggests that they retaliated against him because of his pending criminal charges. (*Id.*, PageID.3.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial")

(internal quotation marks omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Although Plaintiff alleges in a conclusory manner that Defendants Coyle and Jerkins retaliated against him "because [of] the criminal case Plaintiff is charged with," Plaintiff alleges no facts in support of this conclusory assertion. (ECF No. 1, PageID.3.) Instead, Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff's complaint is devoid of *facts* suggesting that Defendants Coyle and Jerkins retaliated against him because Plaintiff engaged in any protected conduct. Plaintiff's conclusory, speculative allegation fails to state a claim for relief. Accordingly, his First Amendment retaliation claims against Defendants Coyle and Jerkins will be dismissed.

### ii. Fourteenth Amendment Equal Protection Claims

Plaintiff also vaguely alleges that Defendants Coyle and Jerkins violated his Fourteenth Amendment equal protection rights. (ECF No. 1, PageID.3.) The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff does not identify a fundamental right, and he does not allege that he is a member of a suspect class. "[P]risoners are not a suspect class," *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000), "nor are classifications of prisoners," *Mader v. Sanders*, 67 F. App'x 869, 871 (6th Cir. 2003).

To state an equal protection claim in a class-of-one case, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v.*

*Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects." *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v.*

9

*Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018).

Plaintiff's equal protection claims are wholly conclusory. He fails to identify any fellow inmate or individual who was similar in all relevant aspects. Moreover, Plaintiff's complaint is wholly devoid of facts suggesting that Defendants Coyle and Jerkins intentionally and arbitrarily discriminated against him. Plaintiff's conclusory allegations simply do not suffice to state a claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment equal protection claims against Defendants Coyle and Jerkins.

### iii. Medical Care Claims

The primary claim set forth in Plaintiff's complaint is that Defendants Coyle and Jerkins were deliberately indifferent to his medical needs by delaying his referral for a urinalysis for seven months. Plaintiff contends that because of the delayed referral, he was not diagnosed with bladder cancer until it had reached stage 3.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). Both "[t]he Eighth and Fourteenth Amendments are violated 'when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (citations omitted). The application of the proper constitutional right depends on the nature of Plaintiff's detention: the Eighth

Amendment applies to convicted prisoners and the Fourteenth Amendment applies to pretrial detainees. *Id.* (citations omitted). Plaintiff suggests that he is currently facing pending criminal charges and, therefore, is a pretrial detainee.

Until recently, the Sixth Circuit applied the Eighth Amendment's prohibition on cruel and unusual punishment to Fourteenth Amendment claims for inadequate medical care as well, requiring that a plaintiff demonstrate both the objective and subjective elements of deliberate indifference. *See Trozzi v. Lake Cnty.*, 29 F.4th 745, 751–52 (6th Cir. 2022) (discussing case history for the Eighth Amendment's deliberate indifference standard). However, after the Supreme Court's opinion in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which eliminated the subjective element of a pretrial detainee's excessive force claim, in *Brawner v. Scott Cnty.*, 18 F.4th 551 (6th Cir. 2021), the Sixth Circuit "appl[ied] *Kingsley*'s reasoning to claims alleging inadequate medical care[, b]ut [the Sixth Circuit] stopped short of fully *eliminating* the subjective injury." *Trozzi*, 29 F.4th at 752–53 (emphasis in original) (quoting *Brawner*, 14 F.4th at 591). Specifically, the Sixth Circuit held that:

> Reading *Farmer*, *Kingsley*, *Brawner*, and *Greene* together, a plaintiff must satisfy three elements for an inadequate-medical-care claim under the Fourteenth Amendment: (1) the plaintiff had an objectively serious medical need; (2) a reasonable officer at the scene (knowing what the particular jail official knew at the time of the incident) would have understood that the detainee's medical needs subjected the detainee to an excessive risk of harm; and (3) the prison official knew that his failure to respond would pose a serious risk to the pretrial detainee and ignored that risk. This third inquiry faithfully applies *Kingsley*, 576 U.S. at 396, 135 S. Ct. 2466 (recognizing that liability for a constitutional tort, even one that includes an objective inquiry, must still be "purposeful or knowing" and that criminal "recklessness" might suffice (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L.Ed.2d 1043 (1998))), ensuring that there is a sufficiently culpable mental state to satisfy the "high bar" for constitutional torts grounded in a substantive due process violation. *Cf. Doe v. Jackson Loc. Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 932 (6th Cir. 2020).

*Id.* at 757–58.

Plaintiff has adequately alleged that he had an objectively serious medical need premised upon the fact that he had blood in his urine for seven months. Plaintiff contends that during that seven-month period, Defendants Coyle and Jerkins merely told him to take meloxicam and drink water. By the time they referred Plaintiff for a urinalysis and subsequent proceedings, the cancer in Plaintiff's bladder had spread and was at stage 3. Taking Plaintiff's allegations as true and in the light most favorable to him, the Court concludes that his Fourteenth Amendment due process claims premised upon the receipt of inadequate medical care against Defendants Coyle and Jerkins in their individual capacities cannot be dismissed on initial review.

### B. State Law Claims

As noted above, Plaintiff also asserts state law medical malpractice claims against all three Defendants. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for violations of state law, *see Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995), and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," *Estelle*, 429 U.S. at 106.

In determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556

U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Because the Court has dismissed Plaintiff's federal claims against Defendant CCS, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against that entity. Such claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in state court. Because Plaintiff continues to have pending federal claims against Defendants Coyle and Jerkins, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against them.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendant Correct Care Solutions will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendant Correct Care Solutions will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, the following claims against Defendants Coyle and Jerkins: (1) Plaintiff's official capacity claims; (2) Plaintiff's First Amendment retaliation claims; and (3) Plaintiff's Fourteenth Amendment equal protection claims. The following claims against Defendants Coyle and Jerkins remain in the case: (1) Plaintiff's Fourteenth Amendment individual capacity claims premised upon the receipt of inadequate medical care; and (2) Plaintiff's state law medical malpractice claims.

An order consistent with this opinion will be entered.

Dated:   February 8, 2023                    /s/ Paul L. Maloney
                                             Paul L. Maloney
                                             United States District Judge